[Civ. No. 26020. Second Dist., Div. Four. Nov. 16, 1962.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff and Appellant, v. PATSY ELLEN WATERS et al., Defendants and Respondents.

Samuel B. Stewart, Hugo A. Steinmeyer, George L. Beckwith and W. H. Taylor, Jr., for Plaintiff and Appellant.

Mewborn & Hitchcock and Charlton A. Mewborn for Defendants and Respondents.

BURKE, P. J.—Plaintiff Bank of America National Trust and Savings Association (Bank) appeals from a judgment in favor of defendants as guarantors on a continuing guaranty agreement dated August 9, 1957. As filed, the action sought to recover on a promissory note but at the time of trial it was dismissed without prejudice against the makers and pursued solely against the guarantors on the theory that although the written guaranty had been executed nearly two and a half years before the date of the promissory note upon which the action was based, it was a continuing liability.

The continuing guaranty instrument was executed by the defendant guarantors on August 9, 1957. Under this agreement defendants Jack Waters and Patsy Ellen Waters

guaranteed payment of any and all indebtedness of Bobby D. Waters to the Bank not to exceed at any one time the sum of $4,000. This instrument had been executed at a time when the two Waters brothers were in partnership with one another and loans had been made by the Bank to the partnership. In the latter part of 1959 Bobby D. Waters had discussed with the loan officer of the Bank that he desired to purchase his brother's interest in the business and to continue operating it on his own; and in order to bring this about he desired to borrow money from the Bank. On January 13, 1960, Bobby D. Waters and his wife executed their promissory note to the Bank in the sum of $6,900 and in connection therewith, as had been the custom in making loans from the Bank, they also executed a business loan agreement bearing the same date.

In two previous business loan agreements executed by the Waters brothers, one on September 24, 1957, and the other on March 6, 1959, there was contained therein a paragraph numbered "9" which provided: "As security for the loan, Borrower will deliver to Bank the following collateral or duly executed instruments of security or guaranty, and will comply with all terms, conditions and provisions set forth in such instruments:" In the agreement of September 24, 1957, the additional information was inserted by typewriter: "1. Continuing Guaranty by principals and wives. 2. Assignment of monies by Jack Waters, in amount of $3412.00 from Cook Bros. Truck & Equipment Co." In the agreement of March 6, 1959, there was inserted the language, "Continuing Guaranty by principals and wives."

In the business loan agreement of January 13, 1960, signed by Bobby D. Waters in conjunction with the loan for $6,900, following the standard paragraph numbered "9," there were typed in the words "——NOT APPLICABLE—." In a printed footnote at the bottom of the standard form of business agreement used in each of these three instances the parties are directed to "Insert word 'none' if provision is not agreed to or is not applicable."

It is the position of the Bank that the effect of the insertion of the words "NOT APPLICABLE" in paragraph 9 is merely to negate the promise of the borrower that he will deliver to the Bank duly executed instruments of guaranty and not that no collateral agreement or guaranty is to apply to the loan of January 13, 1960. In its findings the court ruled against this contention, holding that the business loan agreement pertaining to this particular loan of January 13,

1960, states specifically that no collateral agreement or guaranty applies to such loan. In its memorandum of decision the court noted that one of plaintiff's employees had testified that this term meant that another guaranty was already on file but stated, ". . . plaintiff cannot now breathe life into this provision by testifying to an uncommunicated and unilateral interpretation differing from the clear and certain intent of the words. Such an interpretation is not only strained, it is not supported by the facts." The court also found that the guaranty executed by defendant guarantors on August 9, 1957, was duly terminated by them insofar as the obligation sued on in this action is concerned.

The Bank takes the position that by its very terms the written guaranty continues as to any indebtedness, including that arising under successive transactions. It states further "This Guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions." It points out that there was no evidence of any written notice of its revocation. Clearly, however, the parties were free to contract with one another that as to a particular loan the provisions with respect to a written guaranty would be waived, and this the trial court construed was the effect of the modification made by the Bank in its standard form of business loan agreement through the insertion of the words "—NOT APPLICABLE—."

Contracts of guaranty, like all other contracts, should receive a fair and liberal interpretation according to the true import of their language and may be explained by reference to the circumstances under which they were made and the matter to which they relate, the main object being to ascertain and effectuate the intention of the parties. (*Bloom* v. *Bender*, 48 Cal.2d 793, 803 [313 P.2d 568]; *First Nat. Bank* v. *Bowers*, 141 Cal. 253, 261-262 [74 P. 856].)

The circumstances surrounding the guaranty contract in the instant case were that it was given by defendant to cover debts incurred by himself or his brother in the operation of a business in which the two were engaged as partners. Two loans were made for business purposes in which the guaranty contract was incorporated as security for the loans.

However, the loan upon which this suit was brought was not made for the purpose of operating the business. It was given to Bobby Waters for the purpose of buying out his brother's interest in the business. Knowing that this purpose

was outside the business operation purpose of the guaranty contract, Bobby Waters sought and Bank agreed to exclude the guaranty as security for that loan.

 The partnership relationship under which the brothers were operating cannot be ignored in construing actions of the parties in forming and terminating the guaranty contract. The contract of guaranty was formed to promote the partnership. The loan in question was made to terminate the partnership. Obtaining the loan which excluded the guaranty contract by one partner is adequate evidence to support the trial court's finding that the contract of guaranty was terminated since its purpose was ended.

In *Calcot Assn.* v. *Coast Cotton Mills,* 140 Cal.App.2d 268, 272 [295 P.2d 1], the court pointed out that a creditor's right to enforce a contract of guaranty is dependent upon credit being extended in reliance on the guaranty. It is clear in the instant case that there was no reliance by Bank on defendant's guaranty. When the loan in question was made Bank expressly designated the guaranty provision in the loan agreement ''NOT APPLICABLE.''

 The findings of fact find substantial support in the evidence viewed as it must be from the point of view most favorable to the prevailing party, and the documentary evidence justifies the construction placed upon the instrument by the trial court.

While the answer sets up the defense of estoppel and some time is devoted in the briefs to a discussion thereof, we do not deem such discussion necessary to the decision of this case on appeal since by the proper construction of the writtten instruments involved, the particular loan to Bobby D. Waters and Dorothy M. Waters was excluded from the operation of the continuing guaranty signed by defendants.

Judgment affirmed.

Jefferson, J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.