74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The DAI-ICHI KANGYO BANK, LTD., Plaintiff-Appellee,
v.
Robert FUKUTOMI; Tomiko C. Fukutomi, Defendants-Appellants.
 No. 94-55606.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1995.*
Decided Jan. 17, 1996.
 
 Before: HUG, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The Fukutomis appeal the summary judgment against them on liability under their guarantee, and the determination of their damages. The granting of a motion for summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 
 3
 A. Jurisdiction over the appeal.
 
 
 4
 Dai-Ichi Kangyo Bank argues that we lack jurisdiction over the appeal because it was filed late under FRAP 4(a). The judgment was entered on March 18. The Fukutomis faxed their notice of appeal April 18, which was timely, but it was not received in the mail by the clerk until April 21, which was too late. The clerk originally date stamped the mailed notice April 21, but wrote April 18 over the date. The clerk entered the notice of appeal in the docket book as having been filed April 18.
 
 
 5
 Dai-Ichi Kangyo contends that the Central District of California does not accept facsimile filings,[1] and that mailing a notice of appeal is not the same as filing it, citing Vogelsang v. Patterson Dental Co., 904 F.2d 427, 429-30 (8th Cir.1990). They are correct. Nevertheless, we have held that jurisdiction could be exercised in circumstances similar to this, where a notice of appeal was filed by facsimile on time, but the mailed copy of the notice arrived late. United States v. Clay, 925 F.2d 299 (9th Cir.1991). In Clay, the court exercised its discretion and disregarded the "irregularity." Id. at 301. Likewise, we exercise our discretion and consider the appeal on the merits.
 
 
 6
 B. The summary judgment.
 
 
 7
 The Fukutomis have made this appeal pro se in an incomplete "informal brief." The issues explicitly raised on appeal, as stated in their brief are:
 
 
 8
 (1) The trial [court] could should [sic] not have ordered the summary judgment because the Plaintiff did not present sufficient admissible evidence.
 
 
 9
 (2) The trial court should have considered the evidence submitted in opposition to the motion for summary judgment.
 
 
 10
 (3) The trial court should not have awarded damages to Plaintiff.
 
 
 11
 In their facts section, the Fukutomis also seem to argue that Dai-Ichi Kangyo failed to mitigate damages, which can conceivably be part of issues 2 and 3.
 
 
 12
 The facts before the district court were undisputed. The Fukutomis guaranteed a letter of credit, millions of dollars were disbursed by the bank on the letter, and the Fukutomis did not honor their guaranty. The evidence was sufficient to establish those facts, and the Fukutomis established no genuine issue of material fact.
 
 
 13
 Dai-Ichi Kangyo was not required to proceed against Bibo first before acting on the principal guaranty. Section 3(b) of the principal guaranty states: "Each Guarantor unconditionally waives any defense to the enforcement of this Guaranty, including ... any right to require the Bank to proceed against the developer [Bibo] or any Guarantor ..." Such a waiver of rights to proceed against the Fukutomis before Bibo is authorized under California law. See American Guaranty Corp. v. Stoody, 41 Cal.Rptr. 69, 71-72 (Cal.App.1964) (holding that guarantor's waiver of right to require lessor to proceed first against the lessees was consistent with statute and public policy) Bloom v. Bender, 313 P.2d 568, 572-75 (Cal.1957) (not against public policy that after primary obligor was released from obligation, surety was still liable, because he had waived his statutory right to be discharged along with the primary obligor); Cal.Civ.Code Sec. 3513 ("Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.").
 
 
 14
 C. Failure to mitigate.
 
 
 15
 The district judge explicitly stated that it was not considering the Fukutomis' failure to mitigate damages defense because they failed to plead it. They pleaded eighteen other affirmative defenses, but not this one. The closest the answer comes is affirmative defense # 8 which states: "The Complaint, and each alleged claim for relief, is barred because all damages alleged were caused by Plaintiff's own conduct." That is not the same thing; it sounds like a comparative negligence defense to a tort claim. The failure to raise mitigation as an affirmative defense in the answer ordinarily waives any right to that defense. 999 v. C.I.T. Corp., 776 F.2d 866, 870 n. 2 (9th Cir.1985).
 
 
 16
 Even had the district court read the answer more liberally, because it was pro se, the Fukutomis offered no proof sufficient to establish a genuine issue of fact as to a mitigation defense. The guarantee does not impose any duty on the bank to perform the Fukutomis' own duties if they fail to do so. The Fukutomis argue that if Dai-Ichi Kangyo would have paid the $58,000 remarketing fee, the remarketing agent would not have resigned, and the trustee would not have made its draws on the letter of credit. The Remarketing Agreement makes clear that paying the remarketing agent was Bibo's responsibility:
 
 
 17
 The Developer [Bibo] hereby agrees to pay the Remarketing Agent during the Variable Period a continuing remarketing and administration fee for the Bonds computed at the rate of 1/8 of 1.00% per annum on the average daily aggregate unpaid principal amount of the Bonds outstanding from time to time. Such fee shall be payable quarterly in arrears on each January 1, April 1, July 1 and October 1, commencing January 1, 1990.
 
 
 18
 The bank had no duty to pay the remarketing agent. Nor did the Fukutomis submit cognizable evidence that if it had, the bank's loss would have been less.
 
 
 19
 D. Damages.
 
 
 20
 The last issue the Fukutomis raise is that the "trial court should not have awarded damages to Plaintiff." They appear to be attacking the calculation.
 
 
 21
 We have reviewed the record and see no error in the computation of damages, nor any failure in the proofs to support the calculation. Dai-Ichi Kangyo's calculation of damages yielded the same amount awarded by the district court:
 
 
 22
 (a) Bond principal: 22,000,000.00
 
 
 23
 (b) Interest on principal drawn: 1,782,775.00
 
 
 24
 (c) Letter of Credit and drawing fees: 604,840.88
 
 
 25
 (d) Bond interest draws: 164,460.25
 
 
 26
 (e) Cash account credit: (18,485,347.94)
 
 
 27
 (f) Credit bid: (4,800,000.00)
 
 
 
 Total Principal Owed as of 6/30/93 1,266,728.19
 The Fukutomis argue that the plaintiff cannot claim damages with any certainty until the assets are sold to a third person. In their appellee's brief, Dai-Ichi Kangyo argues that the foreclosure sale fixes the value of the property sold. Dai-Ichi Kangyo's citation of Cornelison v. Kornbluth, 125 Cal.Rptr. 557 (1975) supports this argument. In Cornelison, the California Supreme Court held it is proper for creditors to make credit bids at non-judicial foreclosure sales, and that the sale "finally fixes the value of the property therein sold." Id. at 568-69.
 AFFIRMED.
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A review of the district court local rules reveals no explicit rule for the acceptance of filing by facsimile. Rule 5(e) provides that district courts may accept filing by fax if provided for in their local rules. Fed.R.Civ.P. 5(e)